# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

**MILTON SYLVESTER PARKER,**    )
                                )
    **Plaintiff,**              )
                                )
v.                              )    **Case No.: 2:08-CV-1904-VEH**
                                )
**MICHAEL J. ASTRUE,**          )
**Commissioner,**               )
**Social Security Administration,** )
                                )
    **Defendant.**             )

## **MEMORANDUM OPINION**

Milton Sylvester Parker ("Mr. Parker") commenced this action on October 16, 2008, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for a period of disability, disability insurance, and supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be **AFFIRMED**.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

Mr. Parker contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, Mr. Parker asserts that (1) the administrative law judge (hereinafter "ALJ") erred by finding that Mr. Parker does not meet the requirements of Listing 4.02 (chronic heart failure); and (2) the ALJ's determination that Mr. Parker was capable of engaging in "light work" is not based on substantial evidence because the ALJ failed to properly consider Mr. Parker's obesity and the ALJ improperly rejected the opinions of Mr. Parker's treating physicians. Each argument will be addressed in turn.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Parker alleged that his disability period began on December 27, 2004 (Tr. 49). He was 42 years of age on that date. He alleged an inability to work due to congestive heart failure, cardiomyopathy, morbid obesity, and negative effects from a pacemaker that was implanted in December of 2004. (Tr. 49). At the hearing before the ALJ, Mr. Parker testified that he was unable to work because of side effects from daily medications prescribed and taken for his heart conditions. (Tr. 346-348). Mr. Parker's past gainful work experiences include jobs as a security guard, construction worker, and, for a brief time, in management in the fast food industry. (Tr. 338-340).

Mr. Parker's claims were denied initially on September 7, 2005. (Tr. 37). On October 11, 2005, he filed a request for a hearing before an ALJ. (Tr. 33).

A hearing before the ALJ was held on August 9, 2007. (Tr. 330). The ALJ concluded Mr. Parker was not disabled as defined by the Social Security Act and denied his application on September 8, 2007. (Tr. 15-21). Mr. Parker subsequently filed a timely request for review with the Appeals Council. (Tr. 10). On August 14, 2008, it denied review, which resulted in the ALJ's decision being the final decision of the Commissioner. (Tr. 4-6).

On October 16, 2008, Mr. Parker filed his complaint with this court asking for review of the ALJ's decision. (Doc. 1). The matter is ripe for review.

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[1] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

---

[1] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through October 19, 2009.

twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

> (1)   whether the claimant is currently employed;
>
> (2)   whether the claimant has a severe impairment;
>
> (3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;
>
> (4)   whether the claimant can perform her past work; and
>
> (5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed

impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found that Mr. Parker had not engaged in substantial gainful activity since the onset of his alleged disability on December 27, 2004. (Tr. 17). Thus, Mr. Parker satisfied step one of the five-step test. 20 C.F.R. § 404.1520(b).

Under step two, the ALJ determined that "[t]he claimant has the following severe impairments: "congestive heart failure, cardiomyopathy, status post pacemaker implant on Coumadin with a current ejection fraction of 32% (Class II N.Y.H.A.), moderate sleep apnea, and obesity." (Tr. 17 (citations omitted)). Accordingly, the ALJ concluded that Mr. Parker satisfied the second step of the sequential disability evaluative process. 20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Mr. Parker did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18). Specifically, the ALJ

concluded that Mr. Parker did not meet the listing requirement for chronic heart failure, Listing 4.02. Mr. Parker challenges that finding on appeal.

The ALJ evaluated Mr. Parker's residual functional capacity [2] ("RFC") at step four, and the claimant was found to have the ability

> to perform light work except the claimant can sit for four hours in an eight-hour day, stand and walk for four hours in an eight-hour day, can occasionally push/pull with the right arm and legs, climb, bend, stoop, and reach, but is unable to push/pull with the left arm, work at unprotected heights or around dangerous machinery, or in exposure to dust and fumes.

(Tr. 18). The ALJ then determined that Mr. Parker was able to perform his past work as a security guard. (Tr. 21).

Because of the ALJ's finding that Mr. Parker was able to perform past relevant work, it was not necessary to continue to step five of the sequential analysis. (Tr. 21).

Accordingly, the ALJ concluded Mr. Parker was not disabled as defined by the Social Security Act, at any time from December 27, 2004, through September 8, 2007, the date of the ALJ's decision. (Tr. 21).

## ANALYSIS

**I. The ALJ did not commit reversible error in finding that Mr. Parker did not satisfy the listing requirement for chronic heart failure, Listing 4.02.**

---

[2] "Residual function capacity is the most [one] can still do despite [one's] limitations." 20 C.F.R. § 404.1545(a)(1).

Mr. Parker argues that the Commissioner's decision is due to be reversed and that he is entitled to an immediate award of benefits because, according to Mr. Parker, the ALJ did not rely on substantial evidence when making his finding that Mr. Parker did not meet the requirements of Listing 4.02, which provides:

> Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in <u>both</u> A and B are satisfied.
>
>> A. Medically documented presence of one of the following:
>>
>>> 1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or <u>ejection fraction of 30 percent or less</u> during a period of stability (not during an episode of acute heart failure); or
>>>
>>> 2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);
>
> AND
>
>> B. Resulting in one of the following:
>>
>>> 1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the

> performance of an exercise test would present a significant risk to the individual; or
>
> 2. Three or more separate episodes of acute congestive heart failure within a consecutive 12–month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or
>
> 3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:
>
>> a. Dyspnea, fatigue, palpitations, or chest discomfort; or
>>
>> b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or
>>
>> c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or
>>
>> d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 4.02 (emphasis supplied).

When rendering a finding as to Listing 4.02A, the ALJ determined that Mr. Parker had an ejection fraction of 32 percent on the date of his hearing. (Tr. 17). The

Commissioner concedes that he cannot locate any evidence of record to support the ALJ's finding that Mr. Parker's ejection fraction was at 32 percent as of the date of the hearing. (Doc. 10, p. 7). Moreover, the court has carefully examined the record and cannot find any such evidence. The medical source evidence of record shows that Mr. Parker had ejection fractions of 15 percent on December 30, 2004, and 28 percent on November 13, 2006, respectively. (Tr. 111, 295). As such, the ALJ's conclusion that Mr. Parker's ejection fraction was 32 percent as of the date of the hearing is not based on substantial evidence and is seemingly not premised on any evidence at all. Therefore, because the medical evidence shows that Mr. Parker had an ejection fraction of less than 30 percent as of the date of the hearing, the requirement of Listing 4.02A was satisfied.

In spite of the fact that the ALJ did not base his conclusion regarding Mr. Parker's ejection fraction on substantial evidence, that error is harmless because the requirements of <u>both</u> 4.02A and 4.02B must be met in order for a claimant to be found disabled pursuant to Listing 4.02. The ALJ considered the applicability of 4.02B to Mr. Parker, and found as follows:

> [T]he evidence also fails to show persistent symptoms of heart failure, three or more episodes of acute congestive heart failure within a consecutive 12-month period, or an inability to perform an exercise tolerance test. No examining or treating medical source has reported

>     that the claimant has an impairment that medically equals the criteria for
>     a listed impairment.

(Tr. 18). Mr. Parker does not challenge those findings on appeal to this court nor does he raise any argument with regard to 4.02B. *See Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1317 n.17 (11th Cir. 1999) (noting that "[i]ssues that are not clearly outlined in an appellant's initial brief are deemed abandoned"); *Snyder v. Commissioner of Social Sec.*, 330 Fed. Appx. 843, 846 n.2 (11th Cir. 2009) (refusing to address an ALJ's findings of fact with regard to a claimant's mental impairments when the claimant did not challenge the findings on appeal); *Powell v. Astrue*, 250 Fed. Appx. 960, 964 (11th Cir. 2007) (the appellate court did not speak to the ALJ's findings with respect to a claimant's ankle pain where the claimant did not raise the issue on appeal). Nevertheless, the court has reviewed the record and does not find reversible error in the ALJ's conclusions regarding 4.02B.

"[T]he burden is on the claimant to show that [he] is disabled and, therefore, [he] is responsible for producing evidence to support [his] application." *McCloud v. Barnhart*, 166 Fed. Appx. 410, 418 (11th Cir. 2006) (citations omitted). Also, the ALJ has a "duty to develop a full and fair record." *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996). The ALJ is only required, however, to develop a claimant's medical history for the 12 months preceding the month in which the application is

filed with the Commissioner. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The ALJ is "in no way bound to develop the medical record" for the period <u>after</u> the claimant makes his initial application. *Id.* That burden rests on the claimant. *Id.* Also, although the ALJ's duty to develop the record is clear, a claimant must show "prejudice" before a cause will be remanded to the Commissioner for further development of the record. *Robinson v. Astrue*, No. 09-12472, 2010 WL 582617, at *2 (11th Cir. Feb. 19, 2010) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)). In the present case, Mr. Parker has not argued that the record was not fully developed nor has he shown any prejudice as a result of an underdeveloped record.

As noted above, under 4.02B(1) and (3), a claimant must show by medical source evidence that he is unable to perform an exercise tolerance test. There is no such evidence of record. Moreover, this court has not been able to find even a mention of an exercise tolerance test in Mr. Parker's medical records. As such, Mr. Parker failed to demonstrate that he meets the requirements of 4.02B(1) or (3).

Under 4.02B(2), a claimant must show "[t]hree or more separate episodes of acute congestive heart failure within a consecutive 12–month period . . . requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization." There is evidence in the record of only one episode of congestive heart failure requiring

hospitalization, emergency room treatment, or extended physician intervention for 12 hours or more. (Tr. 110-152). As such, 4.02B(2) does not apply to Mr. Parker based on the evidence of record.

Therefore, even though the ALJ erroneously concluded that the requirements of 4.02A were not met in this case, that error is harmless based on the ALJ's finding that 4.02B was not satisfied. Mr. Parker's argument that the ALJ committed reversible error at step three is therefore rejected.

**II.   The ALJ's conclusion that Mr. Parker could perform "light work" is supported by substantial evidence and the ALJ did not improperly reject the opinions of Mr. Parker's treating physicians.**

This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Mr. Parker argues that the ALJ's finding that Mr. Parker had the residual function capacity to perform "light work" is not based on substantial evidence. The court disagrees.

Mr. Parker posits that the ALJ failed to consider the "serious nature" of Mr. Parker's obesity when determining his RFC. (Doc. 8, pp. 12-14). That argument, however, is seemingly without foundation. In his written decision, the ALJ stated that he considered "all symptoms" (Tr. 18). Also, the written decision provides a thorough analysis of the opinions and medical records provided by Mr. Parker's physicians, Dr. Larry Wade, Dr. J. W. Hawkins, and Dr. Jack Zaremba. (Tr. 19-20). Those medical opinions and records contain a plethora of information regarding Mr. Parker's obesity. Based upon the ALJ's written decision and his discussion of the medical records, the court finds that there is no basis to conclude that the ALJ failed to consider the effects of Mr. Parker's obesity when determining his RFC.

Mr. Parker also contends that "the ALJ's findings are not consistent with the opinion of the treating and examining physicians" (*i.e.*, Dr. Wade and Dr. Zaremba). (Doc. 8, pp. 14-15). When making this argument, however, Mr. Parker fails to explain to the court how this is so. Courts are not obligated to read a party's mind or to construct arguments that he failed to expressly raise or that are not reasonably presented in the court file. *See Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it . . . ."). "[T]he onus is upon the parties to formulate arguments." *Resolution Trust,* 43 F.3d

at 599; *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.,* 124 F. Supp. 2d 1228, 1236 (M.D. Ala. 2000) ("It is not for the court to manufacture arguments on Plaintiff's behalf."). That notwithstanding, the court has reviewed the ALJ's decision and the medical source evidence provided by Dr. Wade and Dr. Zaremba. The ALJ's decision is not inconsistent with that evidence.

Dr. Wade began treating Mr. Parker shortly after he was diagnosed with congestive heart failure and cardiomyopathy. As the ALJ noted, the records provided from Dr. Wade indicate an improvement in Mr. Parker's condition over time. Also, and consistent with the records maintained by Dr. Wade, the more current medical assessment of Mr. Parker by Dr. Zaremba supports the ALJ's determination that Mr. Parker has the capacity to perform "light work" with certain limitations. The Commissioner defines "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).[3] Dr. Zambera's notes state that Mr. Parker can lift 20 pounds occasionally and 10 pounds frequently, he can stand or walk for up to 4 hours a day, and he has no restrictions on pushing or pulling with his right arm and both legs. (Tr. 319). The ALJ's RFC determination is not inconsistent with the opinions and records of Dr. Wade or Dr. Zambera when that evidence is viewed as a whole. *See Lamb*, 847 F.2d at 701 (the court must look to the record as a whole).

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence and is in accordance with correct legal standards. As such, the decision of the Commissioner will be **AFFIRMED** by separate order.

**DONE** this the 16th day of March, 2010.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[3] *Cf.* 20 C.F.R. § 404.1567(a) (Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.).